Affirmed and Opinion filed July 13, 1995

In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-93-01925-CV

THE UPJOHN COMPANY, Appellant

V.

WILLIAM R. FREEMAN, MARTHA FREEMAN, Individually and as next friend and guardian of SEAN PERRY FREEMAN, a Minor Child, SUZANNE E. FREEMAN, as next friend and guardian of LEAH SUZANNE FREEMAN and WILLIAM LANCE FREEMAN, Minor Children, LORI YVONNE FREEMAN, PUBLIC CITIZEN, and THE DALLAS MORNING NEWS, Appellees

On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 89-09648-A

# OPINION

Before Chief Justice Thomas[1], and Justices Maloney and James[2]
Opinion By Justice James

This is an appeal from the trial court's order denying in part and granting in part

Upjohn's motion to seal certain documents pursuant to rule 76a of the Texas Rules of Civil

---

[1] The Honorable Linda Thomas succeeded Chief Justice Charles McGarry, a member of the original panel at the time this cause was submitted for decision. Chief Justice Thomas has reviewed the record and the briefs in this case.

[2] The Honorable Tom James succeeded Justice Joe Burnett, a member of the original panel at the time this cause was submitted for decision. Justice James has reviewed the record and the briefs in this case.

Procedure.[3] In two points of error, Upjohn complains the trial court abused its discretion in partially denying the sealing order. Appellees, the Freemans, complain in two cross-points of error that the trial court erred in partially granting the sealing order. The Dallas Morning News and Public Citizen (collectively intervenors) do not appeal the trial court's decision to seal certain documents; they contend the trial court correctly refused to seal the remaining documents. We affirm the trial court's sealing order.

## FACTUAL AND PROCEDURAL HISTORY

William R. Freeman and his family (collectively the Freemans) sued Upjohn for negligence and products liability for injuries resulting from his use of Halcion, a commonly prescribed sleeping pill. *See Upjohn Co. v. Freeman*, 885 S.W.2d 538 (Tex. App.--Dallas 1994, writ denied) (hereinafter the underlying litigation). The Freemans requested discovery of Upjohn's documents about Halcion. Upjohn asked the court to limit the disclosure of the documents under rule 76a. Upjohn posted the public notices required by rule 76a(3). The Dallas Morning News, Inc. and Public Citizen intervened. The Freemans and intervenors contested Upjohn's attempt to have the documents sealed.

On March 30, 1992, the trial court held a hearing as required by rule 76a(4). The trial court denied Upjohn's motion to seal the documents. Upjohn appealed. This Court reversed the trial court's order and remanded for a new rule 76a hearing, holding that the trial court applied the incorrect burden of proof to Upjohn's motion. *See Upjohn Co. v.*

---

[3] All future references to rules are to the Texas Rules of Civil Procedure unless otherwise stated.

*Freeman*, 847 S.W.2d 589, 592 (Tex. App.--Dallas 1992, no writ) (hereinafter *Upjohn I*).

On July 9, 1993, the trial court conducted a second rule 76a hearing. The trial court took judicial notice of all the papers, pleadings, and testimony in the underlying litigation as well as the previous rule 76a hearing. The trial court granted in part and denied in part Upjohn's request for a sealing order. The trial court sealed the portion of the discovery documents containing Upjohn's protocols in testing and analyzing Halcion, based upon the court's finding that the protocols contained trade secrets. The trial court did not seal the remaining documents. Upjohn appealed pursuant to rule 76a(8).

## APPLICABLE LAW

### Standard of Review

We review the trial court's ruling on the rule 76a motion under the abuse of discretion standard. *Upjohn I*, 847 S.W.2d at 590. The test for an abuse of discretion is not whether the facts present a proper case for the trial court's action. Rather, the test is whether the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986); *Upjohn I*, 847 S.W.2d at 590. Rule 76a provides the guiding rules and principles for sealing court records. *Upjohn I*, 847 S.W.2d at 590; *Dunshie v. General Motors Corp.*, 822 S.W.2d 345, 347 (Tex. App.--Beaumont 1992, no writ). An abuse of discretion does not exist when the trial court bases its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Zmotony v. Phillips*, 529 S.W.2d 760, 762 (Tex. 1975); *Recon Exploration, Inc. v. Hodges*, 798

S.W.2d 848, 851 (Tex. App.--Dallas 1990, no writ).

When we review matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *See Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41-42 (Tex. 1989) (orig. proceeding); *Upjohn I*, 847 S.W.2d at 590. Even if we would decide the issue differently, we may not disturb the trial court's decision unless it is arbitrary and unreasonable. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985) (orig. proceeding); *Upjohn I*, 847 S.W.2d at 590. In a nonjury trial or hearing, the trial judge is the sole judge of the witnesses' credibility and the weight given their testimony. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.--Dallas 1989, writ denied).

## Rule 76a

Rule 76a(1) provides that "court records . . . are presumed to be open to the general public." Tex. R. Civ. P. 76a(1). "Court records" include "discovery, not filed of record, concerning matters that have a probable adverse effect upon the general public health or safety . . . except discovery in cases originally initiated to preserve bona fide trade secrets or other intangible property rights." Tex. R. Civ. P. 76a(2)(c).

The trial court may not presume a document or particular group of documents are court records if a party in a rule 76a motion contests whether the discovery in question constitutes court records as defined in the rule. *Eli Lilly & Co. v. Biffle*, 868 S.W.2d 806, 808 (Tex. App.--Dallas 1993, no writ); *Upjohn I*, 847 S.W.2d at 591. When the issue is raised, the trial court must determine whether a specific document or category of documents

are court records. If the character of the discovery documents is disputed, it is the burden of the party claiming the documents are open to the public to prove by a preponderance of the evidence that the documents are court records as defined by rule 76a. *Biffle*, 868 S.W.2d at 808.

If the trial court finds that the documents are court records, the documents are presumed to be open to the general public. The party moving for the sealing order then has the burden to rebut the presumption in order to seal the records. Tex. R. Civ. P. 76a(1); *Biffle*, 868 S.W.2d at 809. A party may rebut the presumption of openness by proving the following:

> (a) a specific, serious and substantial interest which clearly outweighs:
>
> > (1) this presumption of openness;
> >
> > (2) any probable adverse effect that sealing will have upon the general public health or safety;
>
> (b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

Tex. R. Civ. P. 76a(1)(a)(b). The party seeking to seal the court records must prove the elements of rule 76a by a preponderance of the evidence. *Upjohn I*, 847 S.W.2d at 591.

A properly proven trade secret interest may constitute a specific, serious, and substantial interest, which would justify restricting access to the documents in question. *See Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992). A trade secret may consist of any formula, pattern, device, or compilation of information which is used in one's

business and which gives one an opportunity to obtain an advantage over competitors who do not know or use it. *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 776 (Tex.), *cert. denied*, 358 U.S. 898 (1958); *Rugen v. Interactive Business Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.--Dallas 1993, no writ).

The court may conduct an *in camera* inspection of the records. TEX. R. CIV. P. 76a(4). The court may base its decision on the pleadings, any stipulations of the parties, affidavits and attachments filed by the parties, discovery requests, and oral testimony. TEX. R. CIV. P. 76a(4); *see* TEX. R. CIV. P. 120a.

A motion relating to sealing or unsealing court records shall be decided by written order, open to the public, which shall state the specific reasons for finding and concluding whether the showing required by rule 76a(1) has been made and the specific portions of court records which are to be sealed. *See* TEX. R. CIV. P. 76a(6).

## DISCUSSION

The discovery in question consists of a large number of highly technical documents not filed in the trial court's record.[4] Upjohn offered to tender the documents for the trial court's inspection. It appears from the record that the trial court did not inspect all of the documents. Likewise, not all of the documents have been presented to this Court for review. However, an *in camera* inspection of the documents is not required. Rule 76a provides that the trial court *may* inspect records *in camera* or may base its decision on the

---

[4] A small portion of the documents was entered into evidence during the underlying litigation.

pleadings, any stipulations of the parties, affidavits and attachments filed by the parties, discovery requests, and oral testimony. *See* TEX. R. CIV. P. 76a(4); *see also Dunshie*, 822 S.W.2d at 347. We have all the records and evidence that the trial court reviewed. Therefore, we review the trial court's findings based upon the entire record which includes the affidavits of experts and the papers, pleadings, and testimony from the underlying litigation.

## Court Records

In point of error one, Upjohn contends that due to an erroneous interpretation of the law, the trial court improperly concluded that the unfiled discovery documents were court records. Specifically, Upjohn makes two arguments: (1) the trial court failed to apply the appropriate legal standard in determining whether the unfiled discovery documents were court records; and (2) the Freemans and intervenors offered no evidence or insufficient evidence that the documents were court records.

## Legal Standard

Upjohn contends that it was the Freemans' and intervenors' burden to prove that specific documents have a probable adverse effect upon the general public health or safety, and the trial court required Freeman and intervenors to make only a "general showing that the lawsuit might affect public health or safety."

After the July 9, 1993 rule 76a hearing, the trial court issued its order stating:

> The Court finds by a preponderance of the evidence that the documents in question (the "Discovery Documents") are "court records" as defined in Rule 76a(2)(c) of the Texas Rules of

Civil Procedure. Specifically, the Discovery Documents are discovery, not filed of record, that concern matters that have a probable adverse effect upon the general public health and safety. Additionally, the Court finds that some of the Discovery Documents are "court records" as defined in Rule 76a(2)(c) in that they were admitted in evidence during the trial of this case.

The trial court may not presume documents are court records if a party in a rule 76a motion raises the issue of whether the discovery in question constitutes court records as defined in the rule. When the issue is raised, the trial court must determine whether a specific document or category of documents constitutes court records. *Biffle*, 868 S.W.2d at 808. The trial court, after considering evidence, entered a written order finding that the discovery documents in question were court records as defined in rule 76a. The court tracked the language from rule 76a as the guiding rule in finding that the discovery documents were court records. The order expressly limits itself to the documents in question. The record refutes Upjohn's assertion that the trial court required the Freemans and intervenors to make only a "general showing that the lawsuit might affect public health or safety" or that the trial court adopted an incorrect standard to determine whether the documents were court records.

### Factual Findings

**Upjohn's Contentions**

Upjohn further contends the Freemans and intervenors offered no evidence or insufficient evidence that the documents were court records. Upjohn contends the only evidence that the documents were court records was an affidavit, filed by intervenors, which

-8-

contained numerous, general, unsubstantiated conclusions. Upjohn argues the Freemans and intervenors "tendered none of the documents for an *in camera* review and offered no evidence that any specific documents have a probable adverse effect on public health or safety."[5] Upjohn further argues that any finding by the trial court that the documents have a probable adverse effect on public health or safety is arbitrary and unreasonable and therefore an abuse of discretion. Upjohn also contends that by approving the drug for use in the United States, the FDA has already determined that the public health and safety is best served by making Halcion available for use in this country. Accordingly, Upjohn concludes, these documents could not have a probable adverse effect on public health and safety.

**Application**

The parties presented the trial court with a significant amount of evidence regarding the nature and subject matter of the documents. The trial court considered several affidavits filed by the parties. The parties do not cite this Court to any objections lodged or sustained with respect to the affidavits, nor does our review of the record find any objections lodged or sustained.

Michael Mosher, one of the attorneys of record for the Freemans, reviewed all of the documents in question. He testified that the documents could be placed into four categories: (1) clinical study documents; (2) internal memoranda; (3) adverse reaction

---

[5] The Freemans had possession of the documents under a confidentiality agreement.

reports and analyses of the adverse reaction reports; and (4) miscellaneous other documents including correspondence with third parties regarding Halcion and depositions with exhibits from other cases around the country regarding Upjohn and Halcion. He further testified that the overwhelming majority of the documents are made up of portions of the Investigational New Drug Application (IND) and the New Drug Application (NDA) which are required for FDA approval. Based on his review of the documents, Mosher testified the documents concern the safety and effectiveness of Halcion.

Kenneth Starz, M.D., associate clinical research director for Upjohn, is the medical monitor for Halcion. He assisted in the preparation and analysis of the clinical study documents contained in Upjohn's NDA for Halcion. He testified that the clinical study documents contain safety and effectiveness data for Halcion and that the documents were submitted to the FDA for consideration in the approval of Halcion.

Sidney Wolfe, M.D., is the director of Public Citizen Health Research Group. In his affidavit opposing the sealing of the documents, he testified that Halcion is the subject of a petition, filed by Public Citizen with the FDA, requesting the FDA to require stricter labeling of Halcion. The petition is intended to protect everyone who uses or may use Halcion. He testified that although he had not reviewed the documents, the records likely to be sealed in this case bear directly on the issues raised in the petition to the FDA.

Thomas Lee Kurt, M.D., M.P.H., is the acting medical director for the North Texas Poison Control Center. He formerly served as the regional medical officer for the FDA. He testified that the IND and NDA that were filed with the FDA to obtain investigational

permission and then marketing approval would ordinarily consist of (1) clinical study documents, (2) correspondence between the FDA and Upjohn regarding warning labels, instructions, and other labelling matters, (3) adverse drug reaction reports, and (4) various reports published in medical literature. The clinical study documents would consist of, among other things, (a) case report forms, (b) technical reports, (c) statistical reports, and (d) executive summaries. In Kurt's opinion, the documents described to him concern matters that have a probable adverse effect upon the general health or safety. Indeed, he believes "the contents of these documents contain information that concern the hazard to public health from the use of this drug."

As noted previously, we review the trial court's ruling on the motion under the abuse of discretion standard. *Upjohn*, 847 S.W.2d at 590. The record contains conflicting evidence. The trial court considered the evidence and determined that the documents concern matters that have a probable adverse effect upon the general public health or safety. A trial court does not abuse its discretion when it bases its decision on conflicting evidence. We overrule point of error one.

### Specific, Serious, and Substantial Interest
### Legal Interpretation

**Upjohn's Contentions**

In point of error two, Upjohn contends the trial court abused its discretion in holding that Upjohn failed to establish a protectable interest sufficient to justify a sealing order under rule 76a. Upjohn argues the trial court ruled that the only substantial interest that

-11-

could justify sealing is a trade secret, and this interpretation ignores other substantial interests Texas courts routinely protect. Upjohn argues rule 76a does not define the types of specific, serious, and substantial interests that will justify a sealing order, and the court must protect substantive rights recognized under existing law. Upjohn contends it established several substantial interests which would justify sealing under rule 76a, but the trial court failed to acknowledge that other common-law, statutory, and constitutionally protected rights are interests that may justify sealing under rule 76a. To support its argument, Upjohn cites this Court to the July 9, 1993 sealing order and to the statement of facts from the rule 76a hearing.

**Application**

The sealing order contains findings of fact as required by rule 76a. The trial court found that the portion of the discovery documents containing Upjohn's protocols in testing and analyzing Halcion contained trade secrets and that Upjohn demonstrated that its trade secret interest justified sealing under rule 76a. The sealing order also contained the following findings:

> The Court further finds that, to the extent the Discovery Documents contain documents that are not Protocols (the "Remaining Documents"), **Upjohn has failed to prove, by a preponderance of the evidence, that its privacy rights, if any, or right to a fair trial are specific, serious and substantial interests under Rule 76a(1)(a). The Court further finds that the Remaining Documents do not contain trade secrets. The Court further finds that Upjohn has failed to show by a preponderance of the evidence any other specific, serious, and substantial interests under Rule 76a(1)(a).** Alternatively, the Court finds that, with respect to the Remaining Documents,

Upjohn has failed to demonstrate, by a preponderance of the evidence: (a) a specific, serious and substantial interest which clearly outweighs (1) the Rule 76a presumption of openness, and (2) any probable adverse effect that sealing will have upon the general public health or safety; and (b) no less restrictive means than sealing the Remaining Documents will adequately and effectively protect the specific interest asserted . . . .

(Emphasis added.)

At the rule 76a hearing, the trial court stated:

The court finds that the protocols themselves are trade secrets and for that reason would be exempt from discovery and disclosure. The court finds that all of the other documents are court records within the meaning of rule 76a, and that the movant has failed to establish a basis under rule 76a for the court to seal the records and thus overcome the presumption of openness. The court finds that the presumption has not been rebutted. . . . [T]he motion to seal is denied.

The record does not support Upjohn's assertion that the trial court considered the only substantial interest that could justify sealing is a trade secret. To the contrary, the record indicates that the trial court considered all of the interests that Upjohn asserted. Sealing was denied based upon Upjohn's failure to prove the interests it asserted. The order specifically finds that Upjohn failed to prove by a preponderance of the evidence that its privacy rights, right to a fair trial, trade secret interest (with respect to the "Remaining Documents"), or any other interests were specific, serious, and substantial interests under rule 76a(1)(a).

-13-

**Factual Findings**

**Upjohn's Contentions**

Upjohn contends that any factual findings on this issue were arbitrary and unreasonable. Upjohn claims it established several substantial interests which would justify sealing under rule 76a, including: (1) the documents contain confidential business information which is protected under existing law; (2) public dissemination of the documents would constitute an unconstitutional invasion of its right to privacy; (3) public dissemination of the documents would prejudice Upjohn's due process right to a fair trial; and (4) the documents contain trade secrets. Further, Upjohn contends that its interests clearly outweigh the presumption of openness and that Upjohn established that its interests cannot be protected by less restrictive means.

Upjohn contends the affidavits of Drs. Robert Straw, Judith Jones, and Kenneth Starz established: (1) the documents contain confidential business information; (2) public dissemination of the documents would constitute an unconstitutional invasion of its right to privacy, an unconstitutional taking of property, and prejudice Upjohn's due process right to a fair trial; and (3) the documents contain trade secrets.

Upjohn points to the FDA approval of Halcion to establish that continued protection of Upjohn's right of confidentiality would not have a probable adverse effect upon the general public health and safety. Upjohn relies on *Jacobs v. Dista Prods. Co.*, 693 F. Supp. 1029, 1035 (D. Wyo. 1988) (by allowing prescription drug to be marketed and sold, FDA has determined that legitimate public interest in its availability outweighs any adversities that

might arise in course of its usage).

**The Evidence in the Record**

Straw is the director of project management for Upjohn. He testified that Upjohn would suffer competitive and commercial harm if the case report forms, technical and statistical reports, and executive summaries were released to the general public. He explained in detail how competitors could use the information contained in the documents to develop and market drugs.

Starz is an associate clinical research director for Upjohn. Using almost identical language as Straw, Starz testified about the competitive and commercial harm from release of the documents to the public.

Jones was the director for the division of drug and biological experience for the FDA. She testified that NDA case report forms, statistical reports, technical reports, and executive summaries are protected from public dissemination to maintain the proprietary and confidential nature of the material in order to uphold the protection of the patent. She stated that such data, when separated from the application as a whole, might be misleading or misinterpreted.

Dr. Elmer Gardner, the former director of the division of neuropharmacological products for the FDA, testified that the FDA thoroughly reviewed and evaluated the documents in question and properly concluded that Halcion is safe and effective. He concluded the continued protection of the documents would not have a probable adverse effect upon the general public health and safety.

On the other hand, Mosher, counsel of record for the Freemans, testified in his affidavit that the results of some of the clinical trials have been published in medical literature. Once the patent expires on Halcion, some documents which had previously been protected would no longer be protected.[6] Adverse reaction reports are available from the FDA through a Freedom of Information Act request. Some of the documents include letters written by third parties to Upjohn complaining about Halcion or notifying Upjohn about experiences with Halcion. He also testified that Halcion has had significantly more adverse reaction reports than other drugs in its class and that doses of Halcion greater than 0.25 mg have been banned in other countries.

Kurt, medical toxicologist and acting medical director for the North Texas Poison Control Center, testified that the serious side effects caused by Halcion make it unsafe for general use. In his opinion, Halcion poses an unreasonable risk of dangerous, even fatal, side effects and should be banned in the United States as it has been in the United Kingdom and other countries. In his opinion, no interest that could be asserted by Upjohn could outweigh the general public's need to become fully informed about Halcion before it is taken, as well as the medical community's decision to continue to prescribe it.

**Application**

The trial court determined that Upjohn failed to establish a basis (other than trade secrets with respect to the "protocols") under rule 76a for the court to seal the records.

---

[6] Halcion went off patent in October 1993.

Alternatively, the trial court found that Upjohn failed to demonstrate by a preponderance of the evidence an interest which, in balance against the public's interest, justified sealing all of the documents. The trial court determined that based on the evidence presented to it, the presumption of openness had not been rebutted.

Having reviewed the entire record, including part of the subject documents, we conclude the record supports the trial court's findings. The record contains evidence of compelling reasons supporting the presumption of openness. The trial court based its decision on conflicting evidence. Consequently, there can be no abuse of discretion. *Davis*, 571 S.W.2d at 862; *Recon*, 798 S.W.2d at 851. We overrule point of error two.

### The "Protocol Documents"

In cross-point of error one, the Freemans contend the trial court erred in finding that any Upjohn documents were confidential or contained trade secrets. The Freemans argue that: (1) the clinical trial documents were not confidential because they are available to the public from the FDA and (2) Upjohn is collaterally estopped from arguing that any of its documents were trade secrets or otherwise confidential because Upjohn was a party in *Grundberg v. Upjohn*, 137 F.R.D. 372 (D. Utah 1991) (hereinafter *Grundberg I*).

### FDA Release of Information

The Freemans rely upon a letter, dated March 10, 1993, from the FDA to Upjohn to support their claim that the documents in question have been released to the public. Upjohn responds with an affidavit from one of its attorneys who routinely monitors the release of information from the FDA. Neither document was before the trial court at the

-17-

hearing on the sealing order, nor are the documents properly before this Court. The Freemans do not cite this Court to anything in the record to support their contention. An appellant has the burden to present a sufficient record to show reversible error. *See* Tex. R. App. P. 50(d). We require an appellant to identify the places in the record that support its complaint. *See Keene Corp. v. Gardner*, 837 S.W.2d 224, 229 (Tex. App.--Dallas 1992, writ denied). We are not required to search the record to determine if appellant's contentions are valid. *See Keene*, 837 S.W.2d at 229.

Nevertheless, we searched the entire record for some evidence of wholesale public release of the documents by the FDA. We were unable to find evidence supporting the Freemans' contentions. The record does, however, contain evidence supporting the trial court's finding that the portion of the discovery documents that contain Upjohn's protocols in testing and analyzing Halcion contain trade secrets. A trade secret may consist of any formula, pattern, device, or compilation of information which is used in one's business and which gives one an opportunity to obtain an advantage over competitors who do not know or use it. *Hyde*, 314 S.W.2d at 776; *Rugen*, 864 S.W.2d at 552. Drs. Straw, Jones, and Starz all testified at length regarding the competitive and commercial harm to Upjohn if the information contained in the documents were released.

### Collateral Estoppel

The trial court has broad discretion in determining whether or not to apply the doctrine of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979); *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex. 1986). Collateral estoppel precludes

relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit. *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex. 1988); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 820-21 (Tex. 1984).[7] A party seeking to invoke the doctrine must establish: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Bonniwell*, 663 S.W.2d at 820-21. We give the prior adjudication of an issue estoppel effect only if it was adequately deliberated and firm. *Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 115 (Tex. App.--Dallas 1991, no writ).

The Freemans contend that Upjohn was a party in *Grundberg I*, where the precise issues before the trial court were litigated and that "Upjohn litigated; Upjohn lost." *Grundberg I* considered whether discovery documents produced in the underlying products liability case involving Halcion should continue to be regarded as confidential or otherwise restricted. Following a two-day evidentiary hearing, the district court entered findings of fact and conclusions of law. The district court stated, "Upjohn cannot claim trade secrets or confidentiality as to information set forth in the case report forms, . . . [ and the] technical and statistical reports not authored by Upjohn cannot properly be classified as confidential to Upjohn." However, the court recognized problems of possible prejudice to the jury

---

[7] The Freemans assert collateral estoppel against Upjohn in a state proceeding based on a prior holding in a federal court. We need not decide whether to use federal or state collateral estoppel law, because there is little difference between the federal courts' formulation of the doctrine and our own. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 n. 7 (Tex. 1994); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

because of pretrial publicity if documents and materials were released before trial. It also noted that certain documents might contain trade secrets and confidential information requiring rulings on admissibility and public access which could best be determined at trial. *Grundberg I*, 137 F.R.D. at 391, 394-95. The protective order remained in force until those documents were admitted into evidence at trial or otherwise used at trial. *Grundberg I*, 137 F.R.D. at 396. Based upon a voluntary and unconditional stipulation for dismissal by the parties, the district court dismissed the case. The preexisting protective order was left in place. Freeman and Public Citizen filed motions to intervene to gain access to the documents, and the parties asked to modify the protective order. The district court denied the motions to intervene and modified the protective order. *Grundberg v. Upjohn*, 140 F.R.D. 459, 461-63 (D. Utah 1991) (hereinafter *Grundberg II*).[8]

The district court's prior adjudication of whether the documents in question contained trade secrets and confidential information was not final. The *Grundberg I* court specifically noted that its preliminary determinations might change at trial. *Grundberg I*, 137 F.R.D. at 391. In *Grundberg I* and *Grundberg II* there was no final adversarial adjudication of the claims of privilege and the propriety of sealing documents because of the settlement and voluntary dismissal of the case. The district court denied Public Citizen's and Freeman's right to intervene. Therefore, they could not fully litigate the remaining issues.

---

[8] We note that the district court stated "that substantial harm could occur by the wholesale rendition of immediate public access to the documents in this case, and courts which require production may well determine to impose the same restrictions as were imposed by this court, pending of course public hearings. This court, of course, does not direct any other court or body as to such matters, since those determinations must be made under the discovery rules and other considerations applicable in the jurisdiction in question." *Grundberg II*, 140 F.R.D. at 473.

The claims of privilege in *Grundberg I* and *Grundberg II* were not adequately deliberated and firm. We give the prior adjudication of an issue preclusive effect only if it was adequately deliberated and firm. *See Cockrell*, 817 S.W.2d at 115; *see also Morgan v. Deere Credit, Inc.*, 889 S.W.2d 360, 367 (Tex. App.--Houston [14th Dist.] 1994, no writ). The trial court did not abuse its discretion in refusing to apply the doctrine of collateral estoppel to preclude Upjohn from litigating whether the documents contained trade secrets or confidential information. We overrule cross-point of error one.

### Mootness

In cross-point of error two, the Freemans contend that Upjohn's appeal is moot because Halcion is now off patent. The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *FDIC v. Nueces County*, 886 S.W.2d 766, 767 (Tex. 1994). The controversy in this case involves whether the documents in question are court records and whether Upjohn met the requisite burden under rule 76a to justify sealing. If Upjohn ceased to have an adequate interest in the documents once the patent on Halcion expired, any controversy between the parties would end. However, the record does not support the Freemans' contention that any commercial interest Upjohn might have claimed expired in October 1993 when Halcion went off patent. The record is not clear about what documents the FDA releases once a drug goes off patent. Certainly it is not clear if the documents containing trade secrets would be released. An appellant has the burden to present a sufficient record to show reversible error. *See* Tex. R. App. P. 50(d). We require an appellant to identify the places in the record that support its complaint. *See Keene*, 837

S.W.2d at 229. Because the Freemans fail to support their contention, we overrule cross-point of error two.

We affirm the trial court's judgment.

TOM JAMES
JUSTICE

Publish
Tex. R. App. P. 90
931925F.P05

-22-



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE UPJOHN COMPANY, Appellant

No. 05-93-01925-CV      V.

WILLIAM R. FREEMAN, MARTHA FREEMAN, Individually and as next friend and guardian of SEAN PERRY FREEMAN, a Minor Child, SUZANNE E. FREEMAN, as next friend and guardian of LEAH SUZANNE FREEMAN and WILLIAM LANCE FREEMAN, Minor Children, and LORI YVONNE FREEMAN, PUBLIC CITIZEN, THE DALLAS MORNING NEWS, Appellees

Appeal from the 14th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 89-09648-A).

Opinion delivered by Justice James, Chief Justice Thomas and Justice Maloney participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellees William R. Freeman, Martha Freeman, Individually and as next friend and guardian of Sean Perry Freeman, a Minor Child, Suzanne E. Freeman, as next friend and guardian of Leah Suzanne Freeman and William Lance Freeman, Minor Children, Lori Yvonne Freeman, Public Citizen, and The Dallas Morning News recover their costs of this appeal from appellant The Upjohn Company and from the cash deposit in lieu of cost bond. After all costs have been paid, the clerk of the district court is directed to release the balance, if any, of the cash deposit to Baker & Botts, as counsel for appellant The Upjohn Company.

Judgment entered July 13, 1995.

TOM JAMES
JUSTICE